## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| ETHAN RAINEY, on behalf of himself and others similarly situated, | : : : | CIVIL ACTION FILE NO. |
| *Plaintiff,* | : : | |
| v. | : : | **COMPLAINT – CLASS ACTION** |
| VIVINT, INC., a Utah corporation, | : : | |
| *Defendant.* | : : : | **JURY TRIAL DEMANDED** |
| _____/ | | |

## CLASS ACTION COMPLAINT

Plaintiff Ethan Rainey ("Plaintiff" or "Rainey") brings this Class Action Complaint and Demand for Jury Trial against Vivint, Inc., ("Defendant" or "Vivint") to stop the Defendant from violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act by making telemarketing calls to consumers who have specifically asked the Defendant to stop calling them. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Rainey, for this Complaint, alleges upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys, as follows:

## NATURE OF ACTION

1.      As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back. As relevant here, the Telephone Consumer Protection Act of 1991, known as the TCPA, generally prohibits robocalls to cell phones and home phones." *Barr v. Am. Ass'n of Political Consultants*, 140 S. Ct. 2335, 2343 (2020).

2.      This case involves a *win-back* campaign by Defendant Vivint to market its services through the use of telemarketing calls using solicitation text messages and calls in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. (hereinafter referred to as the "TCPA") and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

3.      The recipients of Defendant Vivint's illegal calls, which include Plaintiff and the proposed classes, are entitled to damages under the TCPA and FTSA, and because the technology used by Vivint makes calls *en masse*, the appropriate vehicle for their recovery is a class action lawsuit.

## PARTIES

4.     Plaintiff Rainey is and at all times relevant to this action a Duval County, Florida resident.

5.     Defendant Vivint is a Utah corporation headquartered in Provo, Utah.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction over the TCPA claim pursuant to 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA"). The Court has supplemental jurisdiction over the FTSA claims, as they arise out of the same telemarketing campaign as the TCPA claim.

7.     This Court has specific personal jurisdiction over Defendant Vivint because the Defendant conducts business in this District and directed the calls to Plaintiff here.

8.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendant Vivint directed the calls at issue to Plaintiff's Florida area code cell phone number which Plaintiff received in this District.

## TCPA BACKGROUND

The TCPA and FTSA Prohibit Automated Telemarketing Calls

9.     The Rules under the TCPA prohibit any person or entity from initiating any call for telemarketing purposes to a residential telephone subscriber unless such

3

person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. *See* 47 C.F.R. § 64.1200(d).

10. The Rules framed under the TCPA prescribe the minimum standards which must be met for the procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. *See* 47 C.F.R. § 64.1200(d).

11. Defendant has a practice of contacting consumers to promote their products despite requests from consumers to not be contacted.

12. The FTSA similarly prohibits initiating "an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission [..] made by or on behalf of the seller whose goods or services are being offered." *See* Fla. Stat. § 501.059 (5)(a).

## <u>COMMON ALLEGATIONS</u>

13. Defendant Vivint is a "person" as the term is defined by 47 U.S.C. § 153(39).

4

14.    Defendant Vivint sells home security and smart home products and services to consumers throughout Florida, and the U.S.[1]

15.    Defendant places telemarketing cold calls, including text messages, to solicit consumers to use Defendant's smart home products and services, as in Plaintiff Rainey's case.

16.    Defendant Vivint fails to meet the minimum standards prescribed under the *TCPA Rules* to maintain a list of consumers who request not to receive telemarketing solicitation calls or text messages from or on behalf of Defendant.

17.    Defendant Vivint places cold calls and solicitation text messages to consumers who have previously requested not to receive any further telemarketing calls or texts from or on behalf of Defendant, like in Plaintiff Rainey's case.

18.    Defendant Vivint conducts *win-back* campaigns specifically focused on cold calling old or expired consumer leads, who have not made any inquiries about the Defendant's products or services in the past several weeks, or even months, to solicit sales of Defendant's products or services, including several consumers who have previously requested not to receive any telemarketing calls or texts from or on behalf of the Defendant.

---

[1] https://www.linkedin.com/company/vivint/about/

19.    Many of Defendant's employees have shared their experience of placing cold calls to consumers under the directions and on behalf of Defendant Vivint, for instance:

## Unhelpful and Boring Work Environment

Inside Sales Representative (Former Employee) - Provo, UT - May 13, 2022

This place has a lot of potential and they will try to persuade you to join them by making the job sound a lot more enjoyable than it is. The sales leads are terrible, and 90% of the time they have no idea who or what Vivint is or why we are calling them. The trainers seemed to care about your success until you're put out on the floor with little to no support from a "management" team that is laughable.
The managers walk around and socialize all day long and could care less about your wellbeing unless you're one of their favorites...

Favoritism at this place runs high. And the level of misogyny at this place was unlike any other job or workplace I've experienced. Stay away from this place and find a company who will encourage you to grow and feel welcome no matter who you are.    2

## Good place to work.

Inside Sales Representative (Former Employee) - Orem, UT - May 21, 2021

Co-workers are really nice and the managers do a good job as well. Just be ready to cold call customers if you are in the outbound department but inbound the customers call you.

✓ Pros
  PTO and holidays
✗ Cons
  Cold calling    3

20.    Multiple consumers have reported receiving unsolicited telemarketing calls from Defendant Vivint, including complaints from consumers who continue to receive telemarketing calls from or on behalf of Defendant Vivint even after the

---

[2] https://www.indeed.com/cmp/Vivint-
   2/reviews?fjobtitle=Inside+Sales+Representative&fcountry=US
[3] *Id.*

consumers requested not to receive any more telemarketing calls from or on behalf

of Defendant, like Plaintiff Rainey, for instance:

**Brad T**



07/21/2022

I cant get this company to stop contacting me. I requested information on a security system. I received a call and went over my needs with the sales consultant, etc. In the end, the price was way too high. I think several x every competitor I spoke with.These types of things are fine - this is likely a premium product and they can justify their higher prices - its just not for me.Anyway, in the weeks since, I can't get them to stop calling and texting me. It happens at least every other day. I respond "STOP" to their texts as instructed, I tell the folks on the phone to put me on their do not call list, I have unsubscribed to their emails - this seems to be the only system that has worked. Vivint - PLEASE STOP CONTACTING ME!                                    [4]

**Thomas F**

⭐☆☆☆☆                                                                              07/21/2022

Vivint has been using door to door salesman and phone calls to harass me despite being told to leave me alone and posting signs to not solicit. These requests are regularly ignored, and have woken my sleeping baby or even when we are ourselves getting ready for bed. I am currently on hold to chat to their customer service to file this complaint with them as well, however based on prior experience my expectations are very very low. Next time they knock on my door, maybe I should call the policy? Can BBB give me feedback on my next actions?                                                                        [5]

| | |
|---|---|
| Alternately: | **+18012277000** |
| Reported Name: | **Alarm Company** |
| Reported Category: | **Alarm Company** |
| Last call: | **23 minutes ago** |
| Total Calls: | **121,603** |
| Robokiller User Reports: | **11,726** |

[6]

---

[4] https://www.bbb.org/us/ut/provo/profile/burglar-alarm-systems/vivint-smart-home-1166-4002276/customer-reviews
[5] *Id.*
[6] https://lookup.robokiller.com/p/801-227-7000



---

[7] *Id.*

[8] *Id.*

[9] https://www.shouldianswer.com/phone-number/8012277000/2

21.     Defendant Vivint conducts specific *win-back* telemarketing campaigns, to solicit sales of its products and services from consumers who may have shown interest in Defendant's products or services in the past.

22.     In conducting such telemarketing campaigns, Defendant Vivint also sends telemarketing text messages and calls to consumers who have previously requested not to receive any telemarketing calls or text messages from or on behalf of Defendant.

23.     The Plaintiff and other members of the proposed class received telemarketing calls and texts from or on behalf of Defendant and/or their agents despite requesting not to be contacted by or on behalf of Defendant.

24.     Defendant's actions have harmed Plaintiff and all members of the Classes, defined below, in the form of annoyance, nuisance, and invasion of privacy, occupied their phone lines, and disturbed the use and enjoyment of their phones, in addition to the wear and tear on the phone's hardware (including the phone's battery), the consumption of memory on the phone, and, in some instances, they may have been charged for incoming calls.

25.     In response to these calls, Plaintiff file this lawsuit seeking injunctive relief requiring the Defendant to cease violating the Telephone Consumer Protection

Act and the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF RAINEY'S ALLEGATIONS

26.    Plaintiff Rainey is the subscriber and the sole user of the cell phone number ending xxx-xxx-0329.

27.    Plaintiff Rainey uses his cell phone number for personal and residential purposes only.

28.    In June 2022, Plaintiff Rainey visited Defendant Vivint's website, www.vivint.com, and requested information on a Smart Home security system. Plaintiff was notified online that he would be contacted by a Vivint employee.

29.    Plaintiff Rainey received a phone call from a Vivint employee regarding a Smart Home security system to his cell phone number. When Plaintiff heard the pricing and terms, he informed them he was not interested in purchasing a Vivint system. He informed the Vivint employee that he already had a system with ADT which worked well and was more affordable.

30.    On June 30, 2022, at 12:33 PM, despite making it clear to Defendant Vivint that Plaintiff would not install Defendant's security system in his home, Plaintiff Rainey received a text message on his cell phone from Defendant Vivint using the phone number 385-327-2411:



31.     Defendant's employee Tanner failed to identify his last name in this solicitation text message he sent to Plaintiff Rainey's cell phone to solicit Defendant's products or services.

32.     Plaintiff sent 2 text message responses back to Defendant Vivint on June 30, 2022, the first at 12:36 PM and the second at 12:38 PM:



33.     On June 30, 2022, at 12:38 PM, Plaintiff Rainey, in his response to Defendant Vivint's solicitation text messages, specifically stated, "Please remove me from your contact list effective immediately".

34.     On calling this phone number, 385-327-2411, a Google Voice automated message answers requesting the caller to provide their name. When the call is not answered, a generic Google Voice message plays asking the caller to leave a message.

35.     On June 30, 2022, at 1:46 PM, Plaintiff Rainey received a second text message on his cell phone from Defendant Vivint, this time using the phone number 707-833-7180:



36.     Defendant Vivint's employee Zack failed to identify his last name in the solicitation text message.

37.     On June 30, 2022, at 1:48 PM, Plaintiff Rainey replied to Defendant's solicitation text by sending a text message to the phone number 707-833-7180, reiterating his request to Defendant Vivint to stop contacting him:



38.     On calling this phone number, 707-833-7180, an unidentified generic voicemail message requests the caller to leave a voicemail, and it fails to connect the caller to Defendant Vivint, or to the telephone solicitor who sent the text message on Defendant's behalf.

39.     On June 30, 2022, at 4:01 PM, Plaintiff received a call to his cell phone from Defendant Vivint, using the phone number 816-800-9344.

40.     Plaintiff answered the call and a Vivint employee tried to get Plaintiff to schedule a Vivint security system installation. Plaintiff told Defendant's employee that he specifically asked the Defendant's employee to stop calling Plaintiff's cell

phone. Plaintiff then asked for his cell phone number to be removed from Vivint's system and hung-up.

41.     On calling this phone number, 816-800-9344, the number rings a couple of times, then the ring sound changes as if it has been forwarded, leading to an unidentified generic voicemail message requesting the caller to leave a message.

42.     On July 26, 2022, at 2:25 PM, Plaintiff received yet another text message to his cell phone from Defendant Vivint, using the phone number 801-658-2792:



43.     Plaintiff made multiple requests for the texts and calls to stop, but the unsolicited telemarketing calls from Defendant Vivint continue.

44.     The unauthorized telephone calls and text messages placed by Defendant, as alleged herein, have harmed Plaintiff Rainey in the form of annoyance, nuisance, and invasion of privacy, and disturbed the use and enjoyment

of her phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

45.     Seeking redress for these injuries, Plaintiff Rainey, on behalf of himself and Classes of similarly situated individuals, bring suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., and the Florida Telephone Solicitation Act, Fla. Stat. § 501.059, which prohibit unsolicited telemarketing calls and text messages to phone numbers after the consumer has asked for the calls and text messages to stop.

46.     In response to these calls, Plaintiff file this lawsuit seeking injunctive relief requiring the Defendant to cease violating the Telephone Consumer Protection Act and the Florida Telephone Solicitation Act, as well as an award of statutory damages to the members of the Classes and costs.

## CLASS ACTION ALLEGATIONS

47.     Plaintiff Rainey brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

**TCPA Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through trial (1) Defendant, or an agent calling on behalf of the Defendant, called or texted more than one time, (2) within any 12-month period, (3) for substantially the same reason that Defendant called or texted Plaintiff, (4) including at least once after the person requested that Defendant or its agent to stop.

**Florida Stop Request Class:** All persons in Florida, who, on or after July 1, 2021, (1) Defendant (or an agent acting on behalf of the Defendant) called or texted  (2) at least one time after they requested Defendant or its agent to stop calling or texting.

48.     Plaintiff Rainey is a member of and will fairly and adequately represent and protect the interests of the Classes as he has no interests that conflict with any members of the Classes.

49.     Excluded from the Classes are counsel, the Defendant, and any entities in which the Defendant has a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

50.     Plaintiff and all members of the Classes have been harmed by the acts of the Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, the use of their data plans, and the intrusion on their telephone that occupied it from receiving legitimate communications.

51.     This Class Action Complaint seeks injunctive relief and money damages.

52.     The Classes as defined above are identifiable through the Defendant's dialer records, other phone records, and phone number databases.

53.     Plaintiff does not know the exact number of members in the Classes, but Plaintiff reasonably believes the members of the Classes number, at minimum, in the hundreds in each class.

54.     The joinder of all members of the Classes is impracticable due to the size and relatively modest value of each individual claim.

55.     Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

56.     There are numerous questions of law and fact common to Plaintiff and to the proposed Classes, including but not limited to the following:

(a) whether Defendant or their agents placed multiple calls and texts to Plaintiff and other members of the TCPA Internal Do Not Call Class including at least once after the consumer requested Defendant or their agent to stop calling or texting.

(b) whether Defendant or their agents placed calls and texts to Plaintiff and other members of the Florida Stop Request Class including at least once after the consumer requested Defendant or their agent to stop calling or texting.

(c) whether the calls constitute a violation of the TCPA and the FTSA; and

17

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

57.     Further, Plaintiff will fairly and adequately represent and protect the interests of the Classes. Plaintiff has no interests which are antagonistic to any member of the Classes.

58.     Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA and FTSA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Classes and have the financial resources to do so.

59.     Common questions of law and fact predominate over questions affecting only individual class members, and a class action is the superior method for fair and efficient adjudication of the controversy.  The only individual question concerns identification of class members, which will be ascertainable from records maintained by Defendant and/or its agents.

60.     The likelihood that individual members of the Classes will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

**<u>COUNT I</u>**
**Telephone Consumer Protection Act**
**Violation of 47 U.S.C. § 227**
**On Behalf of Plaintiff Rainey and the TCPA Internal Do Not Call Class**

61.    Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

62.    Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call

for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

63.    Defendant, or an agent calling on behalf of Defendant placed calls to Plaintiff and members of the TCPA Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called by the entity and/or by implementing procedures that do not meet the minimum requirements to allow the Defendant or its agent to initiate telemarketing calls.

64.     The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

65.     The Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the TCPA Internal Do Not Call Class are each entitled to up to $1,500 per violation.

## COUNT II
### Florida Telephone Solicitation Act
### Violation of Fla. Stat. § 501.059
### On Behalf of Plaintiff Rainey and the Florida Stop Request Class

66.     Plaintiff repeats and incorporates the allegations set forth in paragraphs 1 through 60 of this complaint as if fully set forth herein.

67.     Plaintiff Rainey brings this claim individually and on behalf of the Florida Stop Request Class Members against Defendant.

68.     The FTSA prohibits "a telephone solicitor or other person" from initiating "an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated

to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission, made by or on behalf of the seller whose goods or services are being offered." Fla. Stat. § 501.059(5)(a).

69.    A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(j).

70.    In violation of the FTSA, Defendant initiated multiple outbound solicitation calls to Plaintiff Rainey, and other members of the Florida Stop Request Class, who had previously communicated to Defendant that they did not wish to receive any solicitation calls from or on behalf of Defendant.

71.    As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff Rainey and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff Rainey and the Class members are also entitled to an injunction against future calls. *Id.*

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing his attorneys as Class Counsel;

b) An award of damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA and the FTSA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e) Such further and other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff Rainey requests a jury trial.

**ETHAN RAINEY**, individually and on behalf of all others similarly situated,

Dated: August 25, 2022.                Respectfully submitted,

By:  /s/ Stefan Coleman

Stefan Coleman (FL Bar no. 30188)
law@stefancoleman.com
Coleman PLLC
66 West Flagler Street
Suite 900
Miami, FL 33130
Telephone: (877) 333-9427
Facsimile: (888) 498-8946

Avi R. Kaufman, Esq. (FL Bar no. 84382)*
KAUFMAN P.A
237 South Dixie Highway, Floor 4
Coral Gables, Florida 33133
kaufman@kaufmanpa.com
(305) 469-5881

*Counsel for Plaintiff and the Putative Classes*

* Lead Counsel for Plaintiff and the Putative
Classes